RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 17a0133p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

SOUTHERN GLAZER'S DISTRIBUTORS OF OHIO, LLC,

*Plaintiff-Appellee,*

*v.*

THE GREAT LAKES BREWING COMPANY,

*Defendant-Appellant.*

No. 16-4235

---

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 2:16-cv-00861—Michael H. Watson, District Judge.

Argued: May 3, 2017

Decided and Filed: June 26, 2017

Before: GIBBONS, COOK, and GRIFFIN, Circuit Judges.

---

## COUNSEL

**ARGUED:** Marc E. Sorini, MCDERMOTT WILL & EMERY LLP, Washington, D.C., for Appellant. Pierre H. Bergeron, SQUIRE PATTON BOGGS (US) LLP, Cincinnati, Ohio, for Appellee. **ON BRIEF:** Marc E. Sorini, MCDERMOTT WILL & EMERY LLP, Washington, D.C., Amy G. Doehring, MCDERMOTT WILL & EMERY LLP, Chicago, Illinois, for Appellant. David W. Alexander, Aaron T. Brogdon, Christopher F. Haas, SQUIRE PATTON BOGGS (US) LLP, Cincinnati, Ohio, for Appellee.

---

**OPINION**

---

GRIFFIN, Circuit Judge.  Defendant The Great Lakes Brewing Company sought to end its relationship with one of its distributors, Glazer's of Ohio, Inc., after it executed a corporate merger without seeking Great Lakes' consent, as required by their contract.  In response, Glazer's of Ohio's successor corporation, plaintiff Southern Glazer's Distributors of Ohio, LLC, filed suit in the United States District Court for the Southern District of Ohio and moved to preliminarily enjoin the impending termination, arguing that the contract's consent requirement was invalid under Ohio law.  The district court agreed and found that the remaining equities weighed in favor of granting the preliminary injunction.  The defendant manufacturer now appeals, and we reverse.  We hold that the district court erred as a matter of law in ruling that the plaintiff distributor was likely to succeed on the merits.  To the contrary, because the parties' consent provision is valid under state law, the distributor has no likelihood of success.  This legal error warrants reversal of the preliminary injunction order and a remand for further proceedings.

I.

*The Franchise*.  The Great Lakes Brewing Company is a craft beer manufacturer based in Ohio.  According to some, it is *the* craft brewery in Ohio—the first of its kind in the state.  Its products can be found in neighboring states, but Ohio is "its home and most important market," accounting for two-thirds of its sales.  Great Lakes is an expert at making beer, not selling it, so it relies on distributors to get its products onto retailers' shelves.  Glazer's of Ohio, Inc., ("Ohio Glazer's") was Great Lakes' distributor in the Columbus market.  Ohio Glazer's was a subsidiary of a larger company called Glazer's, Inc.  Glazer's distributed all variety of alcoholic beverages in several states, but its bailiwick was beer.  That expertise was an important factor in Great Lakes' decision to choose Ohio Glazer's as its distributor in the Columbus market.

Great Lakes and Ohio Glazer's memorialized their distribution franchise in a written agreement, and two sections of that agreement are particularly pertinent here:  Section 9 and Section 10.

Section 9 deals with "Ownership Changes and Assignments." In Section 9(a), the parties agreed that Ohio Glazer's "must obtain [Great Lakes'] prior written consent to any change in . . . ownership." And in Section 9(d), Great Lakes agreed that "[it] must not unreasonably withhold its consent to an Ownership Change . . . and shall be guided in its decision by its reasonable business judgment."

In Section 10, the parties set out the conditions under which a party could terminate the franchise agreement. Section 10(b) provides that "[Great Lakes] may initiate the termination of this Agreement for cause at any time if Wholesaler fails to substantially comply with any of its obligations under this Agreement . . . ." Under this provision, Great Lakes must "explain[] the reason(s) for termination" and provide Ohio Glazer's an opportunity to "cure the deficiencies that justify termination." In addition, Section 10(c) provides that "[Great Lakes] may also terminate this Agreement for cause immediately upon written notice upon the occurrence of certain causes not subject to cure," one of which is that Ohio Glazer's "undertakes an Ownership Change . . . without the written consent required by section 9."

*The Merger.* These sections became important when rumors of a "powerhouse" merger between Glazer's and another large distributor, Southern Wine & Spirits of America ("Southern"), went public in January 2016. That announcement set off a series of letters between Great Lakes and Ohio Glazer's.

On May 2, 2016, Great Lakes asked Ohio Glazer's for details of the impending deal "in order to assess their options in the Greater Columbus market."

Ohio Glazer's replied on May 11, 2016, and explained that it would convert into a limited liability company, after which its parent company (Glazer's) would "contribute the membership interests in the converted company to Southern Glazer's."[1] Ohio Glazer's asserted that "the pending transaction does not open the Ohio franchise and Great Lakes' consent is not necessary," citing Ohio Rev. Code § 1333.84(F) and a district court decision, *Jameson Crosse,*

---

[1]The parties do not dispute that this transaction constitutes an "ownership change" under the agreement, *see S. Glazer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co.*, No. 2:16-cv-861, 2016 WL 5403106, at *8 n.7 (S.D. Ohio Sept. 23, 2016), but we note that it meets the first definition listed in Section 9(a), which is "any sale or transfer of more than 20% of the outstanding voting shares in Wholesaler."

*Inc. v. Kendall-Jackson Winery, Ltd.*, 917 F. Supp. 520 (N.D. Ohio 1996), as support for its assertion.

That response was not well received. On May 27, 2016, Great Lakes rebuffed Ohio Glazer's assertion that consent was not necessary. It considered the described merger plans as a change of ownership as defined by their agreement. It withheld consent and offered to provide evidence to support its reasonable business judgment in that regard.

The Glazer's-Southern merger went through as planned on June 30, 2016. It created a new parent corporation, Southern Glazer's Wine & Spirits, and Ohio Glazer's became Southern Glazer's Distributors of Ohio ("Ohio Southern Glazer's")—a subsidiary of Southern Glazer's.

Several weeks later, Great Lakes sent written notice that it was terminating the franchise agreement. Citing Section 9 of the franchise agreement, Great Lakes stated that the change in ownership required its prior consent, which Ohio Glazer's did not request. According to Great Lakes, this breach of the franchise agreement constituted just cause for terminating the relationship. Though the agreement authorized Great Lakes to terminate without a notice period, out of an abundance of caution, Great Lakes set the effective termination date for September 25, 2016—sixty days from the date of its notice of termination.

Ohio Southern Glazer's tried to salvage the relationship by way of a letter on September 1, 2016. It responded that, while it did not believe prior consent was required, it "respectfully request[ed] its consent" after the fact, offering to provide any information Great Lakes might need to make that decision.

On September 7, 2016, Great Lakes declined the invitation to retroactively cure the purported breach and sought to implement a mutually agreeable plan to ensure an orderly transition to a new distributor.

*The Fallout.* The next day, Ohio Southern Glazer's filed a declaratory action in federal district court, seeking to preliminarily enjoin Great Lakes from terminating its franchise agreement. The district court granted the motion for a preliminary injunction. Applying the four traditional preliminary injunction factors—(1) likelihood of success, (2) irreparable harm to

plaintiff, (3) substantial harm to others, and (4) the public interest—the court concluded that the first three factors weighed in favor of granting the injunction, and the fourth factor was neutral. Great Lakes now appeals.

## II.

The purpose of a preliminary injunction is to preserve the status quo until a trial on the merits. *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). Because they necessarily happen before the parties have had an opportunity to fully develop the record, the movant "is not required to prove his case in full at a preliminary injunction hearing." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007). That does not mean, however, that preliminary injunctions should be granted lightly. "A preliminary injunction is an extraordinary and drastic remedy," *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008) (internal quotation marks omitted), one that should "only be awarded upon a clear showing that the plaintiff is entitled to such relief," *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

Four factors guide the decision to grant a preliminary injunction: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction." *Bays v. City of Fairborn*, 668 F.3d 814, 818–19 (6th Cir. 2012). We have often cautioned that these are factors to be balanced, not prerequisites to be met. *Certified Restoration*, 511 F.3d at 542. At the same time, however, we have also held that "[a] preliminary injunction issued where there is simply no likelihood of success on the merits must be reversed[.]" *Winnett v. Caterpillar, Inc.*, 609 F.3d 404, 408 (6th Cir. 2010) (bracketing omitted) (quoting *Mich. State AFL–CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997)).

Our review of preliminary injunction orders is deferential, but not entirely so. The ultimate decision to grant an injunction is reviewed for an abuse of discretion. *Planet Aid v. City of St. Johns*, 782 F.3d 318, 323 (6th Cir. 2015). But the district court's legal conclusions, including the movant's likelihood of success on the merits, are reviewed de novo, and its

findings of fact are reviewed for clear error. *Id.* Thus, we reverse a decision granting a preliminary injunction "only if the district court 'relied upon clearly erroneous findings of fact, improperly applied the governing law, or used an erroneous legal standard.'" *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 399 (6th Cir. 1997) (quoting *Washington v. Reno*, 35 F.3d 1093, 1098 (6th Cir. 1994)).

Ohio law governs the parties' contract dispute and, consequently, plaintiff's likelihood of success on the merits. *See Certified Restoration*, 511 F.3d at 541; *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). In applying Ohio law, we follow the decisions of the Ohio Supreme Court, and, in the absence of a controlling opinion, we attempt to predict how that court would decide the issue. *In re Amazon.com, Inc., Fulfillment Ctr. Fair Labor Standards Act (FLSA) & Wage & Hour Litig.*, 852 F.3d 601, 610 (6th Cir. 2017). Our decision is guided by "all the available data," which includes "the decisions (or dicta) of the [Ohio] Supreme Court in analogous cases, [and] pronouncements from other [Ohio] courts[.]" *Id.*

## III.

The sole issue in this case is whether the district court properly entered a preliminary injunction preventing Great Lakes from terminating the parties' franchise agreement. The propriety of a preliminary injunction involves four factors: (1) likelihood of success on the merits; (2) irreparable injury to the movant; (3) substantial harm to others; and (4) the public interest. *Bays*, 668 F.3d at 818–19. We address each factor in turn.

### A.

Ohio Southern Glazer's theory of the case—the basis for its likelihood of success on the merits, in other words—is that the contractual provision supporting Great Lakes' proposed termination (the agreement's consent provision, Section 9(a)) is invalid under the Ohio Alcoholic Beverages Franchise Act, Ohio Rev. Code §§ 1333.82–87 (the "Franchise Act" or "Act").

Broadly speaking, the Franchise Act regulates the relationship between alcoholic beverage manufacturers and their distributors. *See Esber Beverage Co. v. Labatt USA Operating Co., L.L.C.*, 3 N.E.3d 1173, 1175–76 (Ohio 2013) (providing a good overview of the Act). But

more specifically, it imposes two requirements on all written franchise agreements that are critical to plaintiff's case. First, it legislates a "just cause" requirement into every franchise agreement: "[N]o manufacturer or distributor shall cancel or fail to renew a franchise . . . without the prior consent of the other party for other than just cause and without at least sixty days' written notice . . . ." Ohio Rev. Code § 1333.85.

Second, while the Act encourages manufacturers and distributors to enter into written franchise agreements, *see* Ohio Rev. Code § 1333.83, it renders "void and unenforceable" "[a]ny provision of a franchise agreement that waives any of the prohibitions of, or fails to comply with, [the Act]," *id*. "Prohibited acts" are listed in § 1333.84, and pertinent here is the prohibition codified in subsection (F). It says:

> Notwithstanding the terms of any franchise, no manufacturer or distributor engaged in the sale and distribution of alcoholic beverages, or a subsidiary of any such manufacturer, shall:
>
> * * *
>
> (F) Refuse to recognize the rights of surviving partners, shareholders, or heirs and fail to act in good faith in accordance with reasonable standards for fair dealing, with respect to the distributor's right to sell, assign, transfer or otherwise dispose of the distributor's business, in all or in part, except that the distributor shall have no right to sell, assign, or transfer the franchise without the prior consent of the manufacturer, who shall not unreasonably withhold the manufacturer's consent.

Ohio Rev. Code § 1333.84(F).

According to plaintiff, Section 9(a) of the franchise agreement is "void and unenforceable" because it "waives . . . the prohibitions of, or fails to comply with," § 1333.84(F). Noting the explicit requirement of manufacturer consent for transfers of a distributor's *franchise* but no such requirement for transfers of a distributor's *business* (i.e., an ownership interest), plaintiff argues that § 1333.84(F) "reflect[s] an intentional decision by the General Assembly that a manufacturer's consent is **not** required for a change in the distributor's ownership." Yet, plaintiff claims, by requiring manufacturer consent before a change in ownership, "Great Lakes seeks to impose through its contract precisely what the General Assembly omitted from the statute," thereby "purport[ing] to broaden the scope of the prohibition in § 1333.84(F)."

However, plaintiff glosses over what the Franchise Act actually states. Section 1333.84(F) does not, as plaintiff asserts, prohibit a manufacturer from requiring consent with respect to the sale of a distributor's business. Rather, it contains a very specific proscription. Distilled to its essence, the first clause prohibits manufacturers from "fail[ing] to act in good faith in accordance with reasonable standards for fair dealing[] with respect to" a distributor's right to sell its business. Ohio Rev. Code § 1333.84(F). The parties' agreement does not waive that prohibition. Echoing § 1333.84(F)'s "good faith" and "reasonable standards for fair dealing" language, Section 9(d) specifically states that Great Lakes cannot "unreasonably withhold its consent" and must exercise "reasonable business judgement" in deciding whether to consent to a change of ownership. There is no meaningful inconsistency between Section 9 of the franchise agreement and the Franchise Act.

Indeed, far from prohibiting provisions like Section 9, § 1333.84(F) actually *anticipates* that parties will include such provisions in their written franchise agreements. The fact that § 1333.84(F) requires manufacturers to "act in good faith in accordance with reasonable standards for fair dealing" regarding the sale of a distributor's business necessarily implies that manufacturers can have a say over the transaction. Otherwise—if the concept of consent in the sale-of-business context were truly prohibited, as plaintiff contends—there would be no reason for the Ohio General Assembly to require manufacturers to act reasonably in that scenario, as it did in the first clause of § 1333.84(F). Simply put, if we accepted plaintiff's argument, we would render the very statutory provision on which it relies meaningless.

Nonetheless, plaintiff insists that it need not prove its case at this early stage, but need only raise "serious questions" about the validity of Section 9(a), *see Six Clinics Holding Corp., II*, 119 F.3d at 402. In this regard, it relies on *Jameson Crosse, Inc. v. Kendall-Jackson Winery, Ltd.*, 917 F. Supp. 520 (N.D. Ohio 1996). But that case has no bearing on this one. Much like this case, the distributor in *Jameson Crosse* sold its ownership interest to another distributor, prompting the manufacturer to terminate its franchise relationship. *Id.* at 521. But unlike this case, there was no written franchise agreement between the parties, so the manufacturer was forced to rely solely on the Franchise Act to support its position that it had "just cause" to terminate its de facto distribution relationship. *Id.* The only provision remotely applicable was

§ 1333.84(F), which required manufacturer consent before the distributor transferred its *franchise*; there was no similar statutory requirement for transfers of the *business*—a distinction on which *Jameson Crosse* staked its decision. *Id.* at 524–25.

However, plaintiff concedes that parties are permitted to bargain for rights and responsibilities in addition to those set out in the Franchise Act, so long as those contractual provisions do not waive the prohibitions of, or fail to comply with, the Act. Appellee Br., p. 34 (stating that "a distributor's rights are defined by the Franchise Act *and any consistent provisions of a franchise agreement*" (emphasis added)); *see also Bellas Co. v. Pabst Brewing Co.*, 492 F. App'x 553, 557 (6th Cir. 2012) ("[A]s a rule, nothing prohibits parties from contracting for greater protections than those provided by statute."). The question in this case—which is separate from what the baseline rights and responsibilities are under the Act—is whether Section 9's additional consent requirement "waives . . . the prohibition[]" in § 1333.84(F). Ohio Rev. Code § 1333.83. To answer that, we must compare the language of the contractual provision with the language of the Act. And for the reasons stated above, nothing in Section 9 waives the prohibition in § 1333.84(F). It specifically requires the manufacturer to use "reasonable business judgment"—not unlike the "reasonable standards for fair dealing" requirement in § 1333.84(F). Plaintiff's contrary argument elides the specific language of § 1333.84(F).

The district court concluded that plaintiff was likely to succeed largely because of *Jameson Crosse*. However, *Jameson Crosse* provides no support for plaintiff's position. The district court also relied on the fact that a nearby provision in the agreement, Section 10(d), which allows Great Lakes to terminate for no reason at all, conflicts with the Franchise Act's "just cause" requirement. According to the district court, "[i]f the Ohio Franchise Act voids one provision of the Franchise Agreement, it is not inconceivable that another provision is likewise void." But simply because another, irrelevant provision in the parties' contract is invalid does not mean the provision under consideration is also invalid. For one reason, this invalidity-by-proximity rationale would render the parties'—indeed, *every*—contract's severability clause meaningless. For another, Great Lakes gave a reason for its termination and that reason meets

the definition of "just cause" under the Act.**2**  That Section 10(d) possibly provides differently is immaterial.

In sum, the contractual basis for Great Lakes' proposed termination is valid under the Franchise Act.  Thus, the sole basis on which plaintiff intends to succeed at trial is without legal support.  The district court erred as a matter of law in concluding otherwise.

## B.

The second factor asks whether the movant "is likely to suffer irreparable harm in the absence of preliminary relief[.]"  *Platt v. Bd. of Comm'rs on Grievances & Discipline of the Ohio Supreme Court*, 769 F.3d 447, 453 (6th Cir. 2014) (quoting *Winter*, 555 U.S. at 20). An injury is irreparable if it is not "fully compensable by monetary damages," *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012) (quoting *Certified Restoration*, 511 F.3d at 550), that is, "the nature of the plaintiff's loss would make damages difficult to calculate," *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992).  That includes "loss of customer goodwill." *Id.* at 511–12.

Plaintiff has established it would likely suffer irreparable harm in the absence of a preliminary injunction.  According to plaintiff's president, John Roberts, Great Lakes is something of a rainmaker for its distribution business.  He stated that "Great Lakes holds a unique position in the beer market as Ohio's largest regional brewer offering a wide selection of craft beers and the top seasonal ale in the country."  And "because of the high demand for Great Lakes, Southern Glazer's of Ohio has more opportunities to attract new customers and to cross-

---

**2**In its brief on appeal, plaintiff also argued that a mere breach of contract was not sufficient to establish "just cause," and what was needed instead was a performance-related deficiency.  But plaintiff's counsel abandoned this argument during oral argument, agreeing with the court that "just cause is more than a performance breach" and that "if the contract were valid as interpreted in conjunction with the Franchise Act, if there were a breach of the contract, that would constitute just cause[.]"  Oral Argument at 26:35–27:21.  It was a prudent concession, given that the Ohio Court of Appeals defines "just cause" by reference to whether there was a breach of the franchise agreement.  *See Esber Beverage Co. v. Wine Grp., Inc.*, No. 2011CA00179, 2012 WL 983194, at *6 (Ohio Ct. App. March 19, 2012) (holding that "[the manufacturer's] legitimate business reason to consolidate its distributors, *without evidence of a breach* or violation of the OABFA by [the distributor], does not constitute just cause to unilaterally terminate the franchise . . . ." (emphasis added)); *see also Caral Corp. v. Taylor Wine Co.*, No. C-1-80-215, 1980 U.S. Dist. LEXIS 17753, at *13 (S.D. Ohio July 15, 1980) ("The failure of a franchisee or distributor to perform the terms of an existing franchise which are relevant to the business relationship is a good cause for termination or failure to renew.").

sell the other products in its portfolio to existing customers." Roberts continued: "Many customers choose to order from Southern Glazer's of Ohio specifically to obtain the Great Lakes Brands, and once they are ordering the Great Lakes Brands, many customers will also choose to purchase other products. If Southern Glazer's of Ohio were to lose the Great Lakes Brands, retailers would have to begin dealing with a new distributor to obtain them, and some, if not many, of those clients would choose to purchase all of their products from the new distributor to limit the number of distributors with whom they deal."

When a distributor loses a unique product like Great Lakes' craft beers, it threatens their relationship with the retailers that have come to rely on the distributor for the in-demand product. *See Tri-Cty. Wholesale Distribs., Inc. v. Wine Grp.*, 565 F. App'x 477, 483 (6th Cir. 2012) ("The loss of a product which is 'unique' . . . can cause a drop in customer goodwill."). This loss of customer goodwill is a prime example of intangible, irreparable harm. *See Basicomputer*, 973 F.2d at 511–12. And in this case, the effect of the loss of goodwill would be substantial. Great Lakes products make up a large portion of Ohio Southern Glazer's portfolio, comprising 25% of the Columbus branch's beer revenue and 4% of that branch's overall revenue. Courts have found irreparable harm when a manufacturer's products comprise as little as .51% of a distributor's overall business. *See Hill Distrib. Co. v. St. Killian Importing Co.*, No. 2:11-cv-706, 2011 WL 3957255, at *4–5 (S.D. Ohio Sept. 7, 2011); *cf. Dayton Heidelberg Distrib. Co. v. Vineyard Brands, Inc.*, 108 F. Supp. 2d 859, 865 n.4 (S.D. Ohio 2000) (holding that loss of franchise was not irreparable harm because defendant's products were not incomparable and "constituted an insignificant portion of the Plaintiffs' total sales").

Great Lakes counters that the liquidated damages provision in the franchise agreement ensures that monetary damages will fully compensate Ohio Southern Glazer's. But this argument overlooks the other aspects of harm that plaintiff would incur if the contract is prematurely terminated. Great Lakes may be able to reasonably calculate and compensate for damages attributed to the loss of *its* business, but it cannot do so for the collateral terminations Ohio Southern Glazer's will likely suffer from retailers that can no longer get the highly-sought-after Great Lakes beer. *See Hill Distrib.*, 2011 WL 3957255, at *4 (recognizing a distributor's "concern[] that the loss of [the manufacturer's] brand may have a spillover effect, as customers

could start to look to other distributors to satisfy all of their needs"). This factor favors granting the preliminary injunction.

### C.

The third factor asks "whether the injunction would cause substantial harm to others[.]" *Bays*, 668 F.3d at 819. There is no indication that enjoining Great Lakes from terminating this franchise will harm third parties. Those most closely affected—retailers in the Columbus market—will continue to receive Great Lakes products, which in turn means local craft-beer enthusiasts won't go without their Cleveland Brown Ale, The Wit is Over, or other favorite Buckeye-centric beer. Though Great Lakes expressed concern in its correspondence with Ohio Glazer's that the newly formed Ohio Southern Glazer's will be unable to deliver the same level of competence, there is no indication that is currently happening. And the injunction does prevent Great Lakes from executing a distribution agreement with another distributor, but, again, there is no evidence that it is currently suffering some tangible harm from being unable to do so. This factor weighs in favor of the injunction.

### D.

The final factor asks "whether the public interest would be served by the issuance of an injunction." *Bays*, 668 F.3d at 819. This factor favors Great Lakes. The public has a strong interest in holding private parties to their agreements. *Certified Restoration*, 511 F.3d at 551. It also has an interest in enforcing the Franchise Act. *See Tri-Cty. Wholesale Distribs.*, 565 F. App'x at 483–84 ("The Franchise Act therefore represents the legislature's judgment that enforcement of the statute is in the public interest."). The district court held that this factor was neutral, but only because it concluded that the franchise agreement conflicted with the Franchise Act. Because there is no conflict, the public's interest in enforcing private contracts weighs against the injunction.

\* \* \*

In the final analysis, two factors favor the preliminary injunction (irreparable harm to movant and substantial harm to others), and two do not (likelihood of success and public

interest). Typically, this court reviews the district court's ultimate decision to issue a preliminary injunction, i.e., its weighing of the factors, for an abuse of discretion. However, a district court necessarily abuses its discretion when it commits an error of law, *Yoder & Frey Auctioneers, Inc. v. EquipmentFacts, LLC*, 774 F.3d 1065, 1071 (6th Cir. 2014), as the district court did under the likelihood-of-success factor. As explained above, the basis upon which plaintiff contends it will succeed at trial—that Section 9(a) is invalid under the Franchise Act—is without legal support. Nothing in Section 9(a) "waives . . . the prohibitions of" § 1333.84(F). Thus, plaintiff has no likelihood of succeeding at trial under that legal theory. Because the district court committed an error of law—on the all-important likelihood-of-success factor, no less—it abused its discretion in granting the preliminary injunction. *See Winnett*, 609 F.3d at 408 ("[A] preliminary injunction issued where there is simply no likelihood of success on the merits must be reversed[.]" (alterations in original)); *see also Yoder & Frey Auctioneers*, 774 F.3d at 1071.

IV.

We reverse the district court's preliminary injunction order and remand for further proceedings consistent with this opinion.