NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0491n.06

Case No. 20-4312

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| RECO EQUIPMENT, INC., | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE SOUTHERN DISTRICT OF |
| JEFFREY S. WILSON; JOSEPH CRAIG | ) | OHIO |
| RUSSO; REPUBLIC EQUIPMENT | ) | |
| HOLDING, LLC, | ) | |
| | ) | |
| Defendants-Appellants. | ) | |

**FILED**
Oct 28, 2021
DEBORAH S. HUNT, Clerk

Before: ROGERS, GRIFFIN, and THAPAR, Circuit Judges.

THAPAR, Circuit Judge. Jeffrey Wilson and Joseph Craig Russo left a company so they could start their own business. Along the way, they broke some rules, including smuggling out company documents. The lower court preliminarily enjoined Wilson and Russo for breach of contract and misappropriation of trade secrets. But the company didn't provide enough evidence to support its breach-of-contract claim. For the reasons below, we affirm in part, vacate in part, and remand for further proceedings.

I.

RECO Equipment, Inc. is an Ohio company that sells, leases, maintains, and services heavy construction equipment. It operates in several states across the Midwest and Mid-Atlantic but sells

in many more. Part of its business includes repairing and rebuilding old machinery to extend the life of deteriorating equipment.

Two of the defendants, Jeffrey Wilson and Joseph Craig Russo, began working for RECO in 2014, when RECO purchased their former employer. Both started as at-will employees. But in early 2019, Wilson signed an employment contract with RECO. The contract limited what Wilson could do if he left the company. It specified that he had to return "all of [RECO's] tangible and intellectual property," including his cell phone; that he couldn't disclose RECO's confidential information or use it for his own advantage; and that for three years after leaving, he couldn't compete with RECO within fifty miles of its operating territory. R. 1, Pg. ID 17–19.

The next year, Wilson resigned after a dispute with RECO about his position at the company. Around that time, Wilson started his own competitor equipment company—Republic Equipment Holding, LLC. He didn't turn over his cell phone, and RECO found he had also kept other confidential, proprietary information about the accounts he managed. So the company sued Wilson, bringing claims for breach of contract and misappropriation of trade secrets. It asked the district court to grant a preliminary injunction.

Russo never entered into a formal employment contract. But around the same time as Wilson, he also left RECO. He told the company he was leaving to join Wilson's new business. Yet before he resigned, an IT technician had noticed a syncing program running on his computer one day. She investigated it after he left. And she found that Russo had downloaded hundreds of files from RECO's cloud drive to his computer, copied everything on his work computer into Dropbox, and moved his Dropbox account to his personal address. He had also shared a Google Drive link—granting access to the company's folders and files—with a new email address: his account with Wilson's new venture.

In the end, RECO estimated that Russo had downloaded over 400 files and folders on sensitive matters; they included customer information, company finances, and manuals on machine repair history and troubleshooting. So RECO added both Russo and Wilson's new company to the pending lawsuit against Wilson and requested preliminary injunctions against them.

The case proceeded in a few stages. First, the district court granted a preliminary injunction against Wilson. It ordered him to return his cell phone to RECO and stop competing with RECO for ninety days.

Then RECO moved for another preliminary injunction, this time requesting that the court (1) direct Wilson to comply with his noncompete provisions, (2) enjoin Wilson and Russo from using trade secrets to solicit business from RECO customers, and (3) order the pair to return the stolen RECO information. The court held a hearing and granted the company's motion, finding that RECO was likely to succeed on the merits of both its breach-of-contract claim and its trade-secrets claim. Wilson and Russo appealed the preliminary injunction, which we review for an abuse of discretion.

## II.

A preliminary injunction is an extraordinary equitable remedy. To obtain one, a moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm absent an injunction; (3) the balance of the equities tips in its favor; and (4) the injunction is in the public's interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Although we balance these factors, the movant must show at least some likelihood of success on the merits and that it likely will suffer irreparable harm absent the injunction. *See D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324, 326–27 (6th Cir. 2019); *S. Glazer's Distribs. of Ohio, L.L.C. v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017).

When a movant seeks a preliminary injunction on multiple claims, courts evaluate each claim separately. *See, e.g.*, *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522 (6th Cir. 2004). The defendants here challenge aspects of the district court's decisions on two claims: RECO's breach-of-contract claim and its misappropriation-of-trade-secrets claim. We address each in turn.

A.

Take RECO's breach-of-contract claim. Here, RECO sought a preliminary injunction against Wilson, arguing that his decision to open a competitor company violated his contract's three-year noncompete provisions. Wilson does not contest that he breached the noncompete agreement. Instead, he contends that the agreement is unenforceable and that RECO thus failed to establish that it is likely to succeed on this claim.

The enforceability of Wilson's noncompete agreement turns on whether it is "reasonable." *Chi. Title Ins. Corp. v. Magnuson*, 487 F.3d 985, 990 (6th Cir. 2007). A noncompete agreement is reasonable under Ohio law if it satisfies three factors. It must not (1) be "greater than is required for the protection of the employer," (2) "impose undue hardship on the employee," or (3) be "injurious to the public." *Id.* at 991 (quoting *Raimonde v. Van Vlerah*, 325 N.E.2d 544, 547 (Ohio 1975)). RECO bears the burden of establishing each of these factors by "clear and convincing evidence." *Id.* (quoting *Levine v. Beckman*, 548 N.E.2d 267, 270 (Ohio 1988)).[1]

RECO failed to carry that burden. That is, it failed to establish at least one of those factors—namely, that the three-year restriction "does not impose undue hardship" on Wilson. *Id.*

---

[1] Courts interpreting Ohio law are divided on whether they must consider just these three factors or also an augmented list of nine. *Compare Try Hours, Inc. v. Douville*, 985 N.E.2d 955, 965 & n.1 (Ohio Ct. App. 2013) (three reasonableness factors), *with Basicomputer Corp. v. Scott*, 973 F.2d 507, 512 (6th Cir. 1992) (nine), *and Magnuson*, 487 F.3d at 991–92 (applying the nine-factor approach). Because RECO did not show even the minimum three, we need not consider the longer list.

Indeed, RECO failed to present any evidence on the question at all. It did not highlight relevant evidence in its preliminary-injunction briefing; nor at the lower court hearing; and it did no more than gesture to it here. Instead, RECO claims that Wilson should have testified about his own harm. But the burden is on RECO to provide "clear and convincing evidence" for this factor. *Id.* It simply did not.

Since RECO did not make this showing, it also did not show it is likely to succeed on the merits of its breach-of-contract claim at this stage. And because RECO cannot win a preliminary injunction where there is simply no likelihood of success on the merits, *see Great Lakes Brewing Co.*, 860 F.3d at 849, we vacate the preliminary injunction as it relates to Wilson's noncompete provisions.

## B.

Next, RECO's claim for misappropriation of trade secrets. RECO contends that Wilson and Russo stole documents that detail the company's process for providing services, repairs, and rebuilds; the work done by their technicians; the troubleshooting involved; and the novel problems RECO employees encountered. The lower court ordered the pair to return the documents and barred them from using the information to solicit business. On appeal, Wilson and Russo contend that the injunction should not have issued because RECO failed to show that it is likely to succeed on the merits and that it will suffer irreparable injury. We take each issue in turn.[2]

### 1.

To succeed on a misappropriation-of-trade-secrets claim, RECO must make three showings, each by a preponderance of the evidence: (1) that a piece of information is a trade

---

[2] Since Wilson and Russo do not challenge the lower court's analysis of the third and fourth preliminary-injunction factors, we will not review them here. *See RGIS, L.L.C. v. Gerdes*, 817 F. App'x 158, 163 (6th Cir. 2020); *see also Indeck Energy Servs., Inc. v. Consumers Energy Co.*, 250 F.3d 972, 979 (6th Cir. 2000).

secret; (2) that the defendant acquired the trade secret through a confidential relationship; and (3) that the defendant used the trade secret without authorization. *See Handel's Enters., Inc. v. Schulenburg*, 765 F. App'x 117, 122 (6th Cir. 2019). Wilson and Russo dispute only the first element: whether RECO showed the information they took actually constitutes trade secrets.

Under our precedent, the "question of whether something is a trade secret is a question of fact to be determined by the trier of fact upon the greater weight of the evidence." *Hoover Transp. Servs., Inc. v. Frye*, 77 F. App'x 776, 782 (6th Cir. 2003). So we review the district court's determination under the clear-error standard. *Handel's Enters.*, 765 F. App'x at 121–22. As the Supreme Court has explained, clear error is a generous standard of review. We defer to the district court's factual findings and the inferences it drew from them so long as the "account of the evidence is plausible in light of the record viewed in its entirety." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74 (1985). We may not reverse these findings even if we are "convinced" that we "would have weighed the evidence differently" on first impression. *Id.* at 574.

Under Ohio statutory law, information is a trade secret only if it meets two conditions. First, it must "derive[] independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use." Ohio Rev. Code Ann. § 1333.61(D)(1). And second, the information must be "the subject of efforts that are reasonable under the circumstances to maintain its secrecy." *Id.* § 1333.61(D)(2).

The Ohio Supreme Court has outlined six factors to analyze whether an item constitutes a trade secret: (1) "the extent to which the information is known outside the business"; (2) "the extent to which it is known to those inside the business, i.e., by the employees"; (3) "the precautions taken by the holder of the trade secret to guard the secrecy of the information"; (4) "the

savings effected and the value to the holder in having the information as against competitors";
(5) "the amount of effort or money expended in obtaining and developing the information"; and
(6) "the amount of time and expense it would take for others to acquire and duplicate the
information." *Handel's Enters.*, 765 F. App'x at 122; *State ex rel. The Plain Dealer v. Ohio Dep't
of Ins.*, 687 N.E.2d 661, 672 (Ohio 1997), *superseded by statute on other grounds as stated in
State ex rel. Besser v. Ohio State Univ.*, 732 N.E.2d 373, 378 (Ohio 2000). Though no factor is
dispositive, we have noted that a "business or possessor of a potential trade secret must take some
active steps to maintain its secrecy in order to enjoy presumptive trade secret status." *Handel's
Enters.*, 765 F. App'x at 122 (citation omitted).

Here, the district court did not clearly err in finding that the documents in this case
constitute trade secrets. The record contains "compelling evidence" highlighting the importance
of these documents to RECO's business. R. 41, Pg. ID 589. RECO's vice president testified that
the stolen documents contain RECO's "secret sauce for [the] business." R. 50, Pg. ID 659. He
explained that this is because machine parts often "break in unique ways." *Id.* at 642. Over years
of troubleshooting and fixing these machines, RECO technicians diligently "capture[d] that
information" to build institutional knowledge. *Id.* They stored this institutional memory in
"troubleshooting trees," which technicians would use the next time an issue arose to "shorten the
time frame" to repair a machine. *Id.* at 646; R. 41, Pg. ID 589. These efficiency gains offer RECO
a marked competitive advantage.

Put another way, the documents Wilson and Russo took with them featured insights that
RECO had learned only after spending "years developing technical expertise in the maintenance,
servicing, and rebuilding" of certain specialized equipment. R. 20-1, Pg. ID 295. RECO maintains
that "[t]his expertise is not generally known within the industry, and is a primary reason why

RECO has been financially successful." *Id.* What's more, the defendants cannot point to record evidence showing that this "unique" and "novel" information (the troubleshooting trees, for example) is publicly available. Though they argue these documents aren't actually *RECO's* secrets, and instead belong to the machine manufacturers or the customers themselves, this doesn't move the ball. The record reflects that RECO created repair and remanufacturing summaries on how to fix novel, unique issues that it hadn't encountered in machine manuals. Based on the testimony, those documents are created directly by RECO—they don't come from (or go to) the manufacturers or RECO's customers.

Finally, these documents are password protected to keep them from broad distribution. Only RECO employees whose positions require it are allowed access to the documents—the company's effort to guard against situations such as this one. This is enough to show the district court did not clearly err in finding that the information is not publicly available and is "the subject of efforts" to keep it secret. Ohio Rev. Code Ann. § 1333.61(D)(2).

Taken together, we find no reason to depart from the district court's assessment. It is clear from the record that the documents Wilson and Russo pilfered include valuable private information that RECO had gradually developed and sought to safeguard in multiple ways. Thus, the evidence supports the district court's finding that these documents are trade secrets under Ohio law. And because the defendants don't challenge the other two elements of the misappropriation claim, the district court correctly concluded that RECO is likely to succeed on the merits of this claim.

2.

The defendants next argue that RECO failed to establish that it is likely to suffer an irreparable injury without an injunction. *Cf. Nat'l Viatical, Inc. v. Univ. Settlements Int'l, Inc.*,

716 F.3d 952, 957 (6th Cir. 2013) (finding that "a plaintiff's harm is not irreparable if it is fully compensable by money damages"). We disagree.

An injury is irreparable if the harm is difficult to calculate. *See Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992). And under our precedent, a "competitive injury" is one such irreparable harm. *Id.* at 512. That's because of the difficulty in calculating the damages that flow from such a harm. *Id.*; *see also Collins Inkjet Corp. v. Eastman Kodak Co.*, 781 F.3d 264, 279 (6th Cir. 2015) (pointing out that harm to "goodwill and competitive position . . . would be hard to compensate"). The loss of goodwill is also irreparable. *Hall v. Edgewood Partners Ins. Ctr., Inc.*, 878 F.3d 524, 530 (6th Cir. 2017). That's especially true in the trade-secrets context, where the offending competitor may mix profits and savings attributable to the misappropriated information—such as those from higher quality products and reduced research costs—with its own natural profits. *See Avery Dennison Corp. v. Four Pillars Enter. Co.*, 45 F. App'x 479, 485 (6th Cir. 2002) (attempting to calculate damages and noting this makes it "difficult").

Here, the district court correctly found RECO would likely suffer irreparable harm without an injunction. The district court observed that RECO's trade secrets are an important competitive advantage for the company, and when Wilson and Russo stole the proprietary information, they opened RECO up to threats of unfair competition. Indeed, RECO's vice president testified that these secrets allow RECO technicians to service equipment particularly quickly, and they are known for their speed. In short, the trade secrets allow them to be fast, and their speed sets them apart. By stealing the secrets, the defendants could speed up their own process and steal customers. But quantifying this harm with any level of precision would be impossible—a court would not be able to determine whether the use of the trade secrets or legitimate business efforts caused customers to leave RECO. *See id.* at 485–87. Plus, quantifying this competitive advantage alone

is almost impossible. For these reasons, RECO's damages would be difficult to calculate. So it has shown a likelihood of irreparable harm.

The defendants point to two cases to support their argument to the contrary. First, they suggest that the facts here are analogous to *Extracorporeal Alliance, L.L.C. v. Rosteck*, 285 F. Supp. 2d 1028 (N.D. Ohio 2003), *aff'd* 113 F. App'x 98 (6th Cir. 2004) (per curiam). There, the court refused to enjoin the defendants where the plaintiff had an already-existing contract with a customer whose business it feared it would lose after the defendants misappropriated its trade secrets. But in that case, an existing contract provided an explicit dollar amount that the court could use to calculate the plaintiff's damages. *Id.* at 1044–45. Here, there is no existing contract from which to calculate damages.

Second, the defendants point to *Basicomputer*, where we found a likelihood of irreparable harm based on testimony regarding incalculable damages. *See* 973 F.2d at 512. The defendants seem to argue that because the testimony in that case was more robust, RECO's testimony here is insufficient to support an injunction. But nothing in *Basicomputer* set a floor for the amount of testimony necessary for an injunction. Because the testimony here also shows that damages are difficult to calculate, RECO has established a likelihood of irreparable harm.

\*    \*    \*

RECO showed that it is likely both to succeed on the merits of the misappropriation claim and suffer irreparable injury. And the defendants do not contest the district court's conclusions on the other preliminary-injunction factors. Thus, we affirm the lower court's preliminary injunction as to RECO's trade secrets.

III.

Lastly, the defendants argue that the preliminary injunction must be vacated for a reason unrelated to the merits. That is, because the district court failed to consider whether to require security—i.e., bond. Under Federal Rule of Civil Procedure 65(c), a court can issue a preliminary injunction "only if the movant gives security." This rule "protects the enjoined party from any pecuniary injury that may accrue while a wrongfully issued equitable order remains in effect." *Brown v. City of Upper Arlington*, 637 F.3d 668, 674 (6th Cir. 2011) (cleaned up).

Though Rule 65(c)'s language suggests security is mandatory, our circuit has long recognized a district court's "discretion over *whether* to require the posting of security." *Appalachian Reg'l Healthcare, Inc. v. Coventry Health & Life Ins.*, 714 F.3d 424, 431 (6th Cir. 2013) (citation omitted). In other words, a lower court can expressly choose not to require security. But it must affirmatively do so—it can't ignore the issue altogether. *See Roth v. Bank of the Commonwealth*, 583 F.2d 527, 539 (6th Cir. 1978).

Yet here the district court didn't discuss security at all. Thus, we remand for the district court to assess security for the remaining parts of the preliminary injunction. *See NACCO Materials Handling Grp., Inc. v. Toyota Materials Handling USA, Inc.*, 246 F. App'x 929, 952–53 (6th Cir. 2007) (affirming a grant of a motion for a preliminary injunction but remanding for the court to assess the amount of bond to impose when the issue is raised, even after the preliminary injunction is entered).[3]

---

[3] RECO contends that Wilson (but not the other defendants) waived the security requirement in his employment agreement. Because we are remanding the security issue and received little briefing on this matter, we leave this question for the district court to consider in the first instance. *Cf. Hawver v. United States*, 808 F.3d 693, 693 (6th Cir. 2015) (remanding for the district court to consider equitable-tolling arguments in the first instance).

\*   \*   \*

For these reasons, we affirm the preliminary injunction to the extent it enjoins the defendants from using or keeping the protected information.  But we vacate the preliminary injunction for RECO's breach-of-contract claim and remand for proceedings consistent with this opinion.